IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DARREN JOHNSON : CIVIL ACTION

v. :

CORRECTIONAL PHYSICIAN
SERVICES : NO. 00-711

FILED
JUL 19 2010
MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

ORDER AND OPINION

JACOB P. HART
UNITED STATES MAGISTRATE JUDGE

DATE: 7/19/10

On March 31, 2010, the United States Court of Appeals for the Third Circuit granted in part the appeal of plaintiff Darren Johnson, remanding this case to the District Court to consider Johnson's previously denied motion to reinstate Prison Health Services ("PHS") as a defendant in this matter.

The orders appealed from were issued by the Honorable Bruce W. Kauffman, to whom the case was assigned at that time. Later, the case was referred to the undersigned, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Pr. 73. By the time the case was remanded by the Court of Appeals, Judge Kauffman was no longer sitting on this court. Therefore, I have considered the remanded issue. For the reasons set forth below, I will not reinstate PHS as a defendant.

I. Factual and Procedural Background

A. Proceedings Before Judge Kauffman

In this action, brought under 42 U.S.C. § 1983, Johnson alleges that his rights under the Eight and Fourteenth Amendments to the United States Constitution were violated with respect to the treatment of a knee injury he sustained in 1999 while an inmate at Graterford Prison. He argues that proper treatment was wrongfully delayed, resulting in permanent injury which would

not have occurred if he had received timely treatment. Although Johnson began this action in February, 2000, by filing a Motion to Proceed in Forma Pauperis, his complaint was filed on December 13, 2000. Docket at Documents 1 and 15.

Among other defendants, Johnson named Correctional Physician Services, Inc., ("CPS"), which was, at the time of his injury, the private entity employed by the Commonwealth of Pennsylvania Department of Corrections to provide medical care to its inmates at facilities including Graterford. He also sued PHS as a successor in interest to CPS, which stopped providing medical care at Graterford in March, 2000.

On January 19, 2005, Judge Kauffman granted in part and denied in part motions for summary judgment brought by all defendants. In relevant part, he dismissed PHS as a defendant, writing:

> Plaintiff raises a[n] ... Eighth Amendment claim against CPS and PHS. As a preliminary matter, PHS claims that it had no contractual obligation to provide medical services to the inmates at SCI-Graterford until May, 2000. [Citations omitted]. Plaintiff has offered no evidence that PHS was involved with medical care at SCI-Graterford at that time, meaning that it can bear no liability for the events giving rise to this suit. Consequently, summary judgment must be granted in favor of PHS.

Memorandum And Order of January 19, 2005, docketed as Document 123.

Nevertheless, a year later, Judge Kauffman permitted Johnson to obtain discovery from PHS. Order of January 31, 2006, docketed as Document 133. On March 1, 2006, Johnson filed a Motion for Relief from Judgment under Fed. R. Civ. Pr. 60(b)(2), seeking the reversal of Judge Kauffman's order granting summary judgment to PHS. Motion, Docketed as Document 135. In it, he stated that he had finally received in discovery a copy of the Asset Purchase Agreement ("Agreement") between CPS and PHS, dated March 29, 2000, and discovered that, under the Agreement, PHS assumed liability for cases such as his. Id.

2

In an order dated October 5, 2006, however, Judge Kauffman denied Johnson's motion as untimely, writing that Rule 60(b) required it to have been filed within one year of the entry of the judgment at issue. Order, docketed as Document 142. Judge Kauffman also addressed the merits of the motion in a footnote:

> Plaintiff argues that under [the Asset Purchase Agreement], PHS assumed the liabilities of CPS with respect to the provision of health care services to inmates. Motion at 1. However, the Agreement actually states that PHS assumes "all liabilities arising <u>after the Closing Date</u> with respect to the provision of services to inmates covered by the Pa. Contract or the NY Contract." Agreement at p. 7 (emphasis added). The events on which Plaintiff bases his claims occurred in 1999, prior to the Agreement's March 29, 2000, closing date. Accordingly, Plaintiff has presented no new evidence demonstrating extraordinary circumstances which would require this Court to vacate its prior judgment.

Id.

By April 12, 2007, CPS was the only defendant remaining in the case. Judge Kauffman scheduled trial for September 17, 2007. Order, docketed as Document 144. On September 6, 2007, however, counsel for CPS moved to withdraw on the basis that his client no longer existed as a functioning business, and did not have sufficient funds to pay him. Motion to Withdraw, docketed as Document 155. Judge Kauffman granted the motion, and gave CPS 30 days to find substitute counsel. Order, docketed as Document 160.

No new counsel appeared, and on March 31, 2008, Judge Kauffman granted Johnson's motion for a default judgment against CPS. Order, docketed as Document 165. Judge Kauffman then referred the case to me for a trial on the issue of damages. Order, docketed as Document 167.

3

B.   Trial and Appeal

On April 30, 2008, I entered an order scheduling a bench trial for May 28, 2008. Order, docketed as Document 170. Copies of this order were served upon CPS principles Kenan Umar and Emre Umar. See, Trial Transcript at 3. On May 28, 2008, however, only Johnson appeared for trial. I therefore proceeded to hear damages testimony from Johnson. On July 11, 2008, I issued a final judgment in favor of Johnson in the amount of $65,000.00, supported by written findings of fact and conclusions of law. Docketed as Documents 180 and 181.

Johnson appealed to the Court of Appeals for the Third Circuit. Among other bases for appeal, he argued that Judge Kauffman had erred in granting summary judgment in favor of PHS, and in refusing to consider Johnson's motion to reconsider that ruling.

On April 22, 2010, the Court of Appeals for the Third Circuit issued its decision. Johnson v. Stempler, No. 08-3434 (April 22, 2010). The Court of Appeals agreed with Johnson that Judge Kauffman should not have dismissed Johnson's March 1, 2006, motion for reconsideration as untimely. It wrote: "Rule 60(b) applies only to final judgments and the one-year time limitation imposed by the Rule does not apply to situations where the order in question was not properly appealable in the first place." Id. at 10. It added that Judge Kauffman's order dismissing PHS was not a final order because it did not dispose of all issues as to all parties. Id. For this reason, it was not properly appealable under Rule 60. The Third Circuit remanded the case for consideration of the merits of Johnson's argument regarding PHS's liability under the Agreement. Such consideration is now appropriate since a final judgment has been entered.

4

At the request of the parties, I permitted PHS to file a supplemental response to Johnson's March 1, 2006, motion for reconsideration. Order of April 26, 2010, docketed as Document 191. This was filed on May 11, 2010. Johnson filed a reply memorandum on June 4, 2010. Docketed as Documents 192 and 196. On June 10, 2010, I scheduled oral argument on the motion. Order, docketed as Document 197. This argument was held on June 29, 2010. Minute Ordered, docketed as Document 198.

II. Legal Standard

As explained by the Court of Appeals for the Third Circuit, Johnson's motion challenging the dismissal of PHS as a defendant in this lawsuit is now properly considered under Rule 60(b), since a final judgment has been entered in this case. Under this rule, a court may grant relief from judgment based on newly discovered evidence, such as the Asset Purchase Agreement, if the evidence (1) is material and not merely cumulative; (2) could not have been discovered prior to trial (or, in this case, prior to Judge Kauffman's summary judgment order) through the exercise of reasonable diligence; and (3) would probably have changed the outcome of the trial. Bohus v. Beloff, 950 F.2d 919, 930 (3d Cir. 1991); and see Coyler v. Consolidated Rail Corp., 114 F. Appx. 473, 480 (3d Cir. 2004).

III. Discussion

A. The Asset Purchase Agreement

This motion presents a question of contract interpretation. Johnson argues that, in the Agreement, PHS assumed liability for actions such as his own. He points to ¶ 3.1 of the Agreement, which reads:

> Assumed Liabilities. As partial consideration for the purchase of the Assets, Purchaser hereby assumes the following liabilities (the "Assumed Liabilities") of Seller (i) all liabilities of Seller with respect to the Assumed Contracts to the

5

extent arising after the Closing Date [later defined as a date between March 1 and April 30, 2000]; (ii) all accrued current liabilities of Seller as of the Closing Date with respect to the Business with respect to payroll and accrued vacation pay to the extent attributable to any payroll period ending after the Closing Date that relates to the operation of the Business prior to and after the Closing Date or solely to the operation of the Business after the Closing Date; (iii) **all liabilities arising after the Closing Date with respect to the provision of services to inmates covered by the Pa Contract or the NY Contract**; and (iv) any liability of Seller for the NY Rebate, to the extent disclosed to Purchaser.

Asset Purchase Agreement, attached to Document 134 as Exhibit A. [Emphasis supplied].

PHS maintains that this paragraph cannot apply here, since the medical treatment given to Johnson took place in 1999, well before the Closing Date. Clearly, this was also Judge Kauffman's view, as expressed in the footnote to his October 5, 2006, order.

Johnson, however, argues that no actual "liability" arose with respect to Johnson's medical treatment in 1999, because no one at that time was adjudged liable. He offers the Black's Law Dictionary definition of "liability" as "the quality or state of being legally obligated or accountable." Johnson also cites United States v. Hughes Properties, Inc., 476 U.S. 593, 600 (1986), where the United States Supreme court said that a liability "does not accrue as long as it remains contingent." On the basis of this authority, Johnson's counsel asserts that the relevant liability arose only when judgment was entered in this case. Obviously, this is after the Closing Date.

In addition to arguing that ¶ 3.1, does not apply, however, PHS also maintains that ¶ 3.3 of the Agreement explicitly excludes liability:

> Excluded Liabilities. Except for the Assumed Liabilities, in no event shall Purchaser assume, agree to pay, satisfy or discharge or otherwise have any responsibility for any liabilities or obligations of Seller, and, without limiting the generality of the foregoing, Assumed Liabilities shall not include any liabilities or obligations in respect of the following ... (ii) **any liability or obligation of Seller**

6

> **whatsoever which accrued at any time on or prior to the Closing Date, whether or not such liability or obligation arises prior or subsequent to the Closing Date,** including, without limitation, any liabilities with respect to payroll and accrued vacation pay ... insurance related liabilities ... and **litigation or claims** (including, without limitation, contract claims, discrimination claims, EEOC claims and Medical Malpractice Claims ... .

Id.

Again, as to ¶ 3.3, the parties disagree on the meaning of the language used. Johnson again argues that, in a legal sense, no "liability or obligation" had "accrued" with respect to his treatment as of March 29, 2000, the date of the Agreement. Johnson also maintains that the entire paragraph is modified by its first words: "Except for the Assumed Liabilities", which, he argues, includes this case.

In Pennsylvania, the paramount goal of contract interpretation is to determine the intent of the parties. Nova Chemicals, Inc. v. Sekisui Plastics Co., Ltd., 579 F.3d 319, 323 (3d Cir. 2009), citing Garden State Tanning, Inc. v. Mitchell Manufacturing Group, Inc., 273 F.3d 332, 335 (3d. Cir. 2001), citing Meeting House Lane, Ltd. v. Melso, 427 Pa. Super. 228, 628 A.3d 854, 857 (1993). The strongest manifestation of that intent is the wording of the agreement itself. Nova Chemicals, supra, citing Mellon Bank, N.A. v. Aetna Business Credit, Inc., 619 F.2d 1001, 1009 (3d Cir. 198) (applying Pennsylvania law).

Language in a contract is normally given its ordinary meaning. Nova Chemicals, supra, citing Light v. Miller, 303 Pa. Super. 527, 450 A.2d 51, 53 (1982). However, contract language is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. Nova Chemicals, supra, quoting Madison Construction Co. v. Harleysville Mutual Ins. Co., 557 Pa. 595 (1999).

7

Merriam-Webster's Dictionary defines liability as "the quality or state of being liable", and "liable" as "obligated according to law or equity: responsible." Http://www.merriam-webster.com/dictionary/liability and liable. This is a broader definition than the Black's Law Dictionary definition offered by Johnson. It suggests that an actor is responsible under law or equity at the time he acts wrongfully, which in this case would mean the time that Johnson's medical treatment took place.

Moreover, if the word "liability" in the Agreement is given its Black's Law Dictionary meaning, the result is untenable. As PHS pointed out at trial, if ¶ 3.1 assumes liability only for **judgments** arising after the Closing Date, then PHS could be named as a defendant in a lawsuit addressing actions taken by CPS before the closing date – but only in a separate action, filed after the entry of a first judgment. The first trial would be completely useless. CPS would probably (as here) permit a default entry against it, and PHS, as a non-party, would not be able to assert a defense on the merits of the case. A double trial would always be necessary.

It is difficult to see how the parties could have intended this clumsy result, which benefits neither of them. It is much more likely that they did not use the word "liability" in its Black's Law Dictionary sense, but, rather in the broader, Merriam-Webster, sense referring to the time at which actions were taken resulting in a liability. This would lead to the more logical conclusion that PHS agreed to assume liability for services arising under the contract CPS had made with the Pennsylvania Department of Corrections, but only when PHS was actually involved in the behavior giving rise to the liability, i.e., after the closing date. Accordingly, I agree with Judge Kauffman that PHS is not liable regarding the medical care offered to Johnson because it occurred before the closing date.

My conclusion is bolstered by the fact that ¶ 3.3 – although very awkwardly worded – apparently seeks to exclude liability for litigation in which CPS was factually involved. See Watson v. Prison Health Services, Inc., C.C.P. Somerset Cty., No. 399 Civil 2008 (Jan. 22, 2009), which interprets the same Agreement, and states at unnumbered page 9: "In the instant case, the [Agreement] between PHS and CPS includes a section entitled 'Excluded Liabilities,' which specifies that PHS did not assume any of CPS's litigation or claims ... .

B.   De Facto Merger

Johnson also argues that, regardless of what the Agreement may provide, PHS is the successor in interest to CPS under the doctrine of *de facto* merger. In a civil rights action, state common law is applied where the federal statute is deficient in a necessary provision. 42 U.S.C. § 1988. As the Court of Appeals for the Third Circuit once expressed it, 42 U.S.C. § 1988 invites federal courts to adopt state rules to further, but not to frustrate, the purposes of civil rights acts. Miller v. Apartments & Homes of N.J., 646 F.2d 101, 106 (3d Cir. 1981). Here, I do not find that a *de facto* merger existed, under either state or federal law.

The general rule, under either Pennsylvania or federal common law, is that when one company sells all or substantially all of its assets to another company, the purchasing company is not liable as a successor. U.S. v. General Battery Corp., Inc., 423 F.3d 294, 305 (3d Cir. 2005); Continental Insurance Co. v. Schneider, Inc., 873 A.2d 1286, 1929 (Pa. 2005), cited in Greenaway Center, Inc. v. Essex Insurance Co., Slip Copy, 2010 WL 827836 (3d Cir. Mar. 11, 2010) at *3. One exception to this rule is a *de facto* merger, which occurs when the purchasing company is "merely a continuation of the selling corporation." General Battery Corp., supra; Continental, supra.

9

Under either federal or Pennsylvania law, a court is to consider the following factors in deciding whether a *de facto* merger has occurred: (1) continuity of ownership; (2) cessation of the ordinary business by, and dissolution of, the predecessor as soon as practicable; (3) assumption by the successor of liabilities ordinarily necessary for uninterrupted continuation of the business; and (4) continuity of the management, personnel, physical location, and the general business operation. General Battery Corp., supra; Continental v. Schneider, 810 A.2d 124, 134-135 (Pa. Super. 2002); Berg Chilling Systems, Inc. v. Hull Corp., 435 F.3d 455 at 468-469 (3d Cir. 2006), and see Greenaway, supra.

The major difference between federal and state law is that, under current Pennsylvania law, continuity of ownership is crucial; without it, no *de facto* merger can be found. In Fizzano Brothers Concrete Products, Inc. v. XLN, Inc., 973 A.2d 1016 (Pa. Super. 2009), the Pennsylvania Superior Court wrote:

> With regard to continuity of ownership, the trial court acknowledged that none of the owners of XLN became owners of XLNT. [Citation omitted]. This finding, by itself, should have ended the trial court's consideration of XLNT's potential successor liability. Continuity of ownership is a key element that must exist in order to apply the *de facto* merger doctrine, since in the absence of a transfer of stock for assets the consequence of the transaction is not the functional equivalent of a merger. Instead, where there is no continuity of ownership the transaction is merely an arms-length transaction between two corporations and not in any sense a merging of two corporations into one.

973 A.3d at 1020.

On May 19, 2010, the Pennsylvania Supreme Court granted *allocatur* in Fizzano Brothers. 994 A.2d 1081 (Pa. May 19, 2010) (NO. 390 MAL 2009). Therefore, the Fizzano rule is not yet final. Nevertheless, the Superior Court's reasoning is compelling, and it represents Pennsylvania law as it now stands.

10

There is no holding similar to Fizzano under federal common law, making continuity of ownership essential. Nevertheless, it remains a very significant factor in this circuit under federal common law. General Battery Corp., supra (*de facto* merger found where the seller obtained mostly cash, but also a small amount of stock, since it represented an "ongoing interest in their assets"); Einhorn v. M.L. Ruberton Construction Co., 656 F. Supp.2d 463, 476 (D.N.J. 2009) (no *de facto* merger found in an ERISA case where continuity of ownership did not exist, calling continuity of ownership "often critical"); U.S. v. Exide, Civ. A. No. 00-CV-3057 (E.D. Pa. Feb. 27, 2002) (*de facto* merger found in a CERCLA case where there was continuity of ownership); U.S. v. Atlas Minerals & Chemicals, Civ. A. No. 91-CV-5118, 1995 WL 510304 at *90 (E.D. Pa. Aug. 22, 1995) (no *de facto* merger found in a CERCLA case without continuity of ownership, citing HRW Systems, Inc. v. Washington Gas Light Co., 823 F. Supp. 318 (D. Md. 1993), (writing that the "most critical element of the test is continuity of ownership") and In Re Acushnet River and New Bedford Harbor, 712 F. Supp. 1010, 1015 (D. Mass. 1989), (calling continuity of ownership a "key requirement.")).

Even in the few cases from other states where continuity of ownership was not required for a finding of *de facto* merger, the courts looked for something similar. In Kennedy v. City of Zanesville, OH, 505 F. Supp.2d 456, 479 (S.D. Ohio 2007), the United States District Court for the District of Ohio applied the Ohio law of *de facto* merger in a § 1983 case. Kennedy, unlike this case, involved two municipal entities, rather than privately owned corporations. There were no shareholders involved in either entity. Nevertheless, the court did not skip the "continuity of ownership" factor. Rather, it found that the merger and subsequent dissolution of the entities resulted in a relationship between them that was similar to a continuity of shareholders.

Also, in Woodrick v. Jack Burke Real Estate, Inc., 703 A.2d 306, 314 (NJ Super. A.D. 1997), a New Jersey state court found a *de facto* merger even though there was no continuity of stock ownership. There, however, the court emphasized the fact that a principal of the seller became an officer of the buyer and assumed management of the assets which were sold. Id.

Under the Agreement in this case, PHS paid $14 million in cash for the assets of CPS. Agreement at ¶ 2.1. There was no continuity of stock ownership. Apparently, CPS's owners, Kenan and Emre Umar, entered consulting agreements with PHS. Agreement, at vi (Table of Schedules) at 6.1.14(c) and (d). However, there is no evidence that either of them became a PHS officer, as in Woodrick, or assumed management of PHS.

Under either Pennsylvania or federal common law, therefore, I conclude that the lack of continuity of ownership is fatal to Johnson's claim of a *de facto* merger between CPS and PHS. It is difficult to see how two entities can be said to merge when the selling entity no longer has an interest in the business.

C.     Successor Liability in Civil Rights Cases: Brzozowski v. CPS

Finally, Johnson has pointed to the case of Brzozowski v. Correctional Physician Services, Inc., 360 F.3d 173 (3d Cir. 2004). In this Title VII employment discrimination case, the Court of Appeals for the Third Circuit interpreted the very asset purchase agreement at issue here – the March 29, 2000 Agreement between CPS and PHS – and found that the plaintiff should have been permitted to amend her claim to name PHS as a successor in interest to CPS.

The Brzozowksi court did not apply the test for *de facto* merger, as described above. Instead, it employed a test earlier developed for use in employment discrimination cases, requiring only "(1) continuity in operations and work force of the successor and predecessor employers; (2) notice to the successor-employer of its predecessor's legal obligation; and (3) the

12

ability of the predecessor to provide adequate relief directly." 360 F.3d at 178, citing Rego v. ARC Water Treatment Co. of Pennsylvania, 181 F.3d 396, 401 (3d Cir. 1999).

Johnson recognizes that Brzozowski is not a § 1983 case such as this, but he argues that equitable factors compel a similar treatment in the context of a civil rights action. He argues that he should also have the benefit of using the Rego test, rather than the usual test for successor liability.

This argument is not properly considered here. This is because Rule 60(b)(2) permits a motion seeking relief based on the existence of newly discovered evidence which could not have been discovered by the exercise of due diligence in enough time to move for a new trial under Fed. R. Civ. Pr. 59(b). The Brzozowski case is not such evidence. It was filed on February 23, 2004, several months before Johnson filed his response to PHS's motion for summary judgment on April 20, 2004. Docket at Document No. 101. In any event, Brzozowski did not make new law, as it used the test formulated in Rego, a Third Circuit case decided in 1999. The argument could, therefore, have been raised in Johnson's response to PHS's motion for summary judgment, and does not rely on new evidence, as required by Rule 60(b)(2).[1]

Moreover, it is by no means clear that Johnson's argument could succeed. The Brzozowski court did not base its decision on a consideration unique to civil rights plaintiffs. Instead, its decision was based upon principles of labor and employment law. The court noted that "Title VII was molded to a large degree on the National Labor Relations Act, including its

---

[1] The Brzozowski issue was also not raised in Johnson's original Rule 60(b)(2) motion, filed March 1, 2006. This motion discussed only the Asset Purchase Agreement. Brzozowski was mentioned in the District Court for the first time in PHS's supplementary brief on this motion, filed after the remand. It is possible that Johnson raised the argument before the Court of Appeals. If that is the case, it is notable that there was no mention at all of the argument in the Third Circuit's appeal decision; remand was granted only to revisit the Rule 60(b)(2) motion.

relief provisions." 360 F.3d at 177. It declined to apply the traditional *de facto* merger test because "the Supreme Court has expanded the common law rule in the field of labor relations." Id., citing Golden State Bottling Co. v. NLRB, 414 U.S. (1973). Rego, the origin of the three-point test set forth above, was an employment discrimination case.

Further, the other Court of Appeals cases to which the Brzozowski court looked involved employment discrimination. 360 F.3d at 178, n. 10, citing Rojas v. TK communications, Inc., 87 F.3d 745 (5th Cir. 1996) (racial discrimination); EEOC v. G-K-G, Inc., 39 F.3d 740 (7th Cir. 1994) (age discrimination); Slack v. Havens, 522 F.2d 1091 (9th Cir. 1975) (race discrimination).

Thus, the Brzozowski decision was founded on a well-established rule permitting a finding of liability against a successor in interest in employment liability cases, including those brought under Title VII. For this reason, it is not persuasive in a § 1983 case such as this, where there is very little applicable precedent, and certainly none suggesting that anything other than a common-law rule of successor liability should be applied.

IV. Conclusion

For the reasons set forth above, I find that the discovery of the Asset Purchase Agreement would not have changed the outcome of trial under Rule 60. Accordingly, Plaintiff's Motion for Relief from Judgment under Fed. R. Civ. Pr. 60(b)(2), docketed as Document No. 135, is hereby DENIED.

BY THE COURT:

_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE

14